UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

```
IN RE:                      .     Case No. 22-18145(VFP)
                            .
                            .
ATHENA KOSTOPOULOS,         .     M.L.K. Federal Building
                            .     50 Walnut Street, 3rd Floor
                            .     Newark, NJ 07102
          Debtor.          .
                            .     May 2, 2024
. . . . . . . . . . . . .   .     11:27 a.m.
```

TRANSCRIPT OF HEARING ON SECOND MODIFIED CHAPTER 13 PLAN -
BEFORE CONFIRMATION FILED BY BRUCE H. LEVITT ON BEHALF OF
ATHENA KOSTOPOULOS (85) AND HEARING ON CONFIRMATION OF MODIFIED
PLAN SCHEDULED (87)

BEFORE THE HONORABLE VINCENT F. PAPALIA
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

```
For the Debtor:             Levitt & Slafkes, P.C.
                            By:  BRUCE H. LEVITT, ESQ.
                            515 Valley Street; Suite 140
                            Maplewood, NJ 07040
```

TELEPHONIC APPEARANCES:

```
For American Mortgage       Mester & Schwartz, P.C.
Investment Partners         By:  JASON BRETT SCHWARTZ, ESQ.
Management:                 1333 Race Street
                            Philadelphia, PA 19107


Audio Operator:             Mariela Primo
```

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311    Fax No. (609) 587-3599**

2

1          (Proceedings commenced at 11:27 a.m.)

2          THE COURT:  I'm going to call Athena Kostopoulos. 22-

3  18145.  It's the first matter on the calendar anyway

4  chronologically.  And, therefore, I'm going to proceed with

5  that.  And that's -- the case is on for two matters today,

6  confirmation of a second modified plan and also debtor's motion

7  to modify or expunge the proof of claim of a secured creditor.

8          May I have appearances, please?

9          MR. LEVITT:  Good morning, Your Honor.

10          Bruce Levitt for the debtor.

11          THE COURT:  Good morning.  And I see you have --

12          MR. SCHWARTZ:  Good morning, Your Honor.

13          Jason Schwartz on behalf of American Mortgage

14  Investment Partners Management.

15          THE COURT:  Good morning.

16          Mr. Levitt, I see is that your clients that are here?

17          MR. LEVITT:  It's the debtor and her husband, Your

18  Honor.

19          THE COURT:  Right, okay. Good morning and welcome to

20  court.

21          So, Mr. Levitt, we're here -- I want to start with

22  the plan.  We're here on the second modified plan, which

23  provides for a sale, refinance, or mortgage modification by

24  March 31st, 2024.  Today is May 2nd, 2024.  This can't be a

25  surprise this question is that how this plan feasible if the

1 condition, and let's face it, the primary reason for this

2 bankruptcy is the mortgage on the home in Paramus.

3        Nothing's occurred.  I don't see an application to

4 sell.  I don't see an application to refinance.  I don't see a

5 mortgage modification, although I did see that one was offered

6 and rejected by the secured lender.  So how is this a feasible

7 plan?

8        MR. LEVITT:  Your Honor, I was prepared to start out

9 by saying the plan that's currently before the Court is not

10 feasible.  Your Honor is 100 percent correct.  There hasn't

11 been any of that action as of not only March 31st but today.

12 The plan isn't feasible, and I'm not prepared to go forward

13 with that plan today.  Your Honor, that's just the reality.

14        THE COURT:  Yet you filed papers two days ago wanting

15 to start an adversary proceeding that would essentially redo

16 what was done in state court over the course of the last decade

17 or so.

18        MR. LEVITT:  Your Honor, my client believes that

19 based upon the information that was provided to the Court

20 through the certification -- or the affidavit of the expert

21 hired not by my client but by her husband, that there is a

22 basis to file an adversary proceeding in this Court, not to

23 challenge anything having to do with the foreclosure.  And I've

24 said this many times in this proceeding, and I've said it many

25 times to my client.  There is a state court foreclosure

1  judgment --

2          THE COURT:  Didn't that go up to the active?

3          MR. LEVITT:  There was a state court foreclosure

4  judgment in the name of Nationstar rejected, and there was an

5  appeal filed by my client.  It was rejected.

6          THE COURT:  Issues withstanding assignments of a

7  mortgage.  Everything that Ms. McClellan was talking about.

8          MR. LEVITT:  Everything that dealt with that mortgage

9  foreclosure proceeding, absolutely, Your Honor.  Been

10  litigated, can't be re-litigated.  It is my client's position,

11  Your Honor, that the creditor that filed the proof of claim in

12  this Court is not Nationstar.  And, in fact, in their papers,

13  they pretty much acknowledge they don't have an assignment of

14  the judgment.  And my client believes that she's --

15          THE COURT:  What about the court rule that says that

16  you don't have -- if there's a transfer of interest, you can

17  continue when you --

18          MR. LEVITT:  You absolutely can, Your Honor.  But you

19  have to own the judgment.  You can --

20          THE COURT:  Why isn't that a state court issue?

21          MR. LEVITT:  If the judgment is assigned, Your Honor,

22  the assignee of that judgment, the assignee of the judgment can

23  continue in the name of the original plaintiff.

24          THE COURT:  Right.

25          MR. LEVITT:  I don't dispute that.  There's been no

1  assignment of this judgment.  So --

2          THE COURT:  That's why Nationstar is pursuing it, I

3  guess.

4          MR. LEVITT:  But Nationstar -- my client's position,

5  Your Honor, is Nationstar never came before this Court.  My

6  position all along, and I've said it on the record repeatedly,

7  Nationstar is the creditor.  There is a foreclosure judgment

8  for Nationstar.

9          This creditor who's filed papers in this Court, even

10 in the most recent submission can't provide an assignment of

11 mortgage.  Under the merger doctrine, I know there's a lot

12 about the mortgage and the note, but --

13         THE COURT:  You know what?  All this stuff has been

14 gone over before.  Not only in this case but in the prior case

15 of the debtor, and not only in this case and the prior case of

16 the debtor but also in the state court up and down

17 reconsideration, appeals.  Was there certification sought to

18 the Supreme Court?

19         MR. LEVITT:  And I believe there's a pending --

20         THE COURT:  And that was denied?

21         MR. LEVITT:  No, Your Honor.  I believe the

22 certification is still pending.

23         THE COURT:  Oh, it's still pending?

24         MR. LEVITT:  Yeah.

25         THE COURT:  And then there's the issue of -- here's

1 what I'm really stuck on, Mr. Levitt, I have to tell you.  And

2 your clients are here.  And I'm speaking to you and to them.

3          This case was filed with a plan in October of 2022.

4 October of 2022 that said it was based on a sale, refinance, or

5 mortgage modification.  We're in May of '24, a year and a half

6 later, and we have none of those.  We have none of those.  How

7 are we -- how is this good faith?  It's almost a rhetorical

8 question.  No, it is a rhetorical question because it's not

9 good faith.  It's bad faith.

10          It is unmitigated, unvarnished clear-cut bad faith.

11 And to the extent I needed anything, I already thought that

12 when I read the papers before.  But then when I saw on April

13 29th two or three days ago that there was a request to litigate

14 again in this Court the issues that have been litigated ad

15 nauseum in state court and here because there were other

16 attempts to re-litigate them here, I said so the hand has now

17 been shown.  The real purpose of this which was to again delay

18 indefinitely.

19          I think I saw to disgorge the few payments that were

20 made since the default in 2006, which is 18 years ago, and

21 arrearages that total almost a million dollars while the

22 Kostopoulos' live in their home rent and mortgage and I think

23 tax-free?  So they get a few thousand dollars of payments.

24 They got to disgorge them?

25          I just -- so anyway, the hand was tipped.  The hand

1  was shown that that was what -- it was clear to me from the

2  circumstances, but then it was made express by saying, yep, we

3  want to re-litigate the same things all over again in this

4  Court.  And I am not going to do it.  I will not do it.  It's

5  bad faith, and I'm prepared -- I'll hear from Mr. Schwartz or

6  anyone or if you want to respond, you can respond.  But is

7  there -- you retained a realtor, right?

8          MR. LEVITT:  A realtor was retained, Your Honor.

9          THE COURT:  Yeah.  And what did the realtor -- what

10  efforts have there been -- what have those efforts revealed?

11          MR. KOSTOPOULOS:  May I speak?

12          THE COURT:  Huh?

13          MS. KOSTOPOULOS:  May we speak?

14          MR. KOSTOPOULOS:  May we speak?

15          MR. LEVITT:  Your Honor, my client's here.  My client

16  would like to respond.

17          MR. KOSTOPOULOS:  May I speak?

18          MR. LEVITT:  There is -- I can tell you there's no

19  contract, Your Honor.

20          THE COURT:  There is no contract for sale.

21          MR. KOSTOPOULOS:  May we speak?

22          THE COURT:  You know I happen to know because my

23  daughters are in the market for real estate and in Bergen

24  County and Essex County and Morris County.  And the market is

25  incredibly strong.  Incredibly strong.  The market for -- if

1  you have the ability to refinance, you can refinance because

2  there's so much more equity in the houses now.

3          And so here we are 18 months later, am I right?  Is

4  my math right?  October, November, December, and 12 is 15 and 5

5  is really more like 20 months later.  I'm sorry.

6          Do you have anything you want to add?

7          MR. KOSTOPOULOS:  May I speak?  May I speak?

8          MR. LEVITT:  You can't speak.

9          THE COURT:  You're not here as a witness.  You're not

10  here as a witness.

11          MR. LEVITT:  Your Honor, my client's position is

12  they're not planning -- when they suggested the adversary

13  proceeding, it's not to re-litigate any issues.  It's the

14  issues that have been -- they have discovered actually just in

15  recent months, Your Honor.

16          THE COURT:  I heard that, too.  I've heard that in

17  '20 and in '22 and '23 and now '24.  I heard those things, too.

18  I just -- I'm really -- I mean it could go on forever.  At some

19  point -- I've said this before.  Have other people been chasing

20  this, do you know?  Has there been like double -- somebody

21  looking to recover twice?  No.  There's no one looking to

22  recover twice.

23          There's just a mortgage that hasn't been paid in well

24  over a decade.  So I don't know.  I really -- I am really

25  really troubled by this case, as you can tell.  I'm a pretty

1    even-keeled person.  This is very troubling to me.

2           MR. LEVITT:  Your Honor, as I indicated, I agree the

3    case is not feasible.  My clients will tell you that they've

4    been -- my client will tell you that she has been acting in

5    good faith.  But, Your Honor, I have nothing else to respond.

6           THE COURT:  You have no -- I have no proof of that.

7    None.  It's good faith to propose a plan a year and a half ago

8    or more than a year and a half ago for a sale, mortgage, and

9    refinance and not do it in the strongest real estate market

10   that I have seen in, I don't know, at least, I don't know, 20

11   years or my lifetime, maybe?

12          All right.  Mr. Schwartz, do you have anything?

13          MR. SCHWARTZ:  Your Honor, I really don't have

14   anything to add, except to say that obviously we had made an

15   offer at the last confirmation hearing and -- back in January,

16   and obviously we're even further away from any kind of

17   reorganization than we were three months ago.  And if we go

18   into litigation, I'm not sure how the property could be sold,

19   the loan to be modified or refinanced if there are going to be

20   questions about standing.

21          As Your Honor noted, there is still questions in the

22   state court.  Certification is still pending.  But -- and the

23   debtor chooses to continue to fight that in state court, you

24   know, to the extent that the law allows the debtor to do that.

25   But I'm just not sure that the bankruptcy court is the

Case 22-18145-VFP   Doc 110-1   Filed 05/30/24   Entered 05/30/24 12:57:06   Desc
Exhibit Transcript of May 2   2024   Page 10 of 21

10

1  appropriate forum at this point.

2        THE COURT:  I agree.  There's two matters before the

3  Court today, but the Court is going to consider confirmation

4  first.  What is here on before the Court today is confirmation

5  of the debtor's second modified plan that was filed on February

6  1st, 2024.  Similar to the debtor's two previous plans, the

7  second modified plan called for a sale, refinance, or loan

8  modification on the property located at 455 Summit Drive in

9  Paramus by March 31st, 2024.

10       Here it bears noting that the first plan was filed in

11  October of '22, more than a year and a half ago, and that just

12  called for a sale or refinance or mortgage modification without

13  a date, which, you know, has its own issues and its own

14  problems.  But the one that was filed back in the first

15  modified plan and the second modified plan, which are I think

16  essentially identical called for the sale, refinance, or loan

17  modification on that property, which is the residence of the

18  debtor and her husband by March 31st, 2024.

19       I could stop here because March 31st, 2024 has

20  passed.  And, therefore, the plan is not feasible on its face.

21  It's impossible.  We would have to go backwards in time.  But

22  there's more.  There is much more.

23       I got to go through the name, AMIP Management as

24  Servicer for Wilmington Savings Fund Society FSB, as Owner

25  Trustee of the Residential Credit Opportunities Trust IV-A --

Case 22-18145-VFP    Doc 110-1    Filed 05/30/24    Entered 05/30/24 12:57:06    Desc
Exhibit Transcript of May 2   2024    Page 11 of 21

11

1  or VI-A filed opposition to the second -- an objection to the

2  second modified plan on February 29th, 2024, stating that it is

3  due arrears of $930,000, as reflected on Claim 6-1, filed on

4  December 15th, which represents pre-petition arrears dating

5  back to July 1st, 2006, almost 18 years ago.

6         The second modified plan does not provide for arrears

7  through the plan.  It just provides -- it depends entirely on

8  the curing of the pre-petition arrears of the secured creditor

9  through a sale, refinance, or mortgage modification by March

10  31st, 2024.  And that date was put in there because of prior

11  proceedings where I gave the debtors another chance to go

12  forward and proceed with the sale or refinance or mortgage

13  modification, but it had to have a deadline.  It had to have an

14  ending time, because, you know, that's what the Code and what

15  the law calls for.  And it didn't have it.

16         So, as I said, the plan is -- the second modified

17  plan is patently unconfirmable because March 31st has passed,

18  and none of the three promised ways to fund the plan have come

19  to fruition.  But it's not just that.  And I know Mr. Levitt

20  for many many years as a practicing attorney here who's very

21  very proficient and professional.  And if he had a mortgage

22  modification, a sale, or refinance that was in prospect, it

23  would have been before me.  I don't have any of that.

24         I don't have a single application to do anything

25  except retain a realtor which was really basically because I

12

1   said how are you going to sell the property if you don't have a

2   realtor.  So they went to retain a realtor back in January when

3   I gave the other -- essentially gave another extension.

4           But anyway, none of that has happened, so

5   confirmation can be denied on that basis alone.  But it would

6   also be denied because the record in this Court or the lack of

7   a record in this Court and the extensive record in this Court

8   amply demonstrate that the real intention and goal of the

9   debtor is to avoid paying this foreclosure judgment as long as

10  is possible and to continue to litigate and delay and cause

11  additional expense for what is now coming to the close of a

12  second decade.  In a couple of years, it will be the third --

13  the start of the third decade of litigating this.

14          So one of the confirmations for plan -- one of the

15  requirements for confirmation of a plan is that it has been

16  proposed in good faith.  And also another one is feasibility to

17  confirm a plan.  And 1325(a)(6) requires feasibility.  Here,

18  there is no feasibility because, as I stated, the March 31st,

19  2024 date, which was also really an extended date, in effect,

20  passed over a month ago and it's been a year and eight months

21  since the sale, modification, or refinance was proposed.  And

22  none of that has happened, despite the passage of all that

23  time.

24          There is no indication as to any progress made

25  towards the sale, refinance, or mortgage modification with one

Case 22-18145-VFP   Doc 110-1   Filed 05/30/24   Entered 05/30/24 12:57:06   Desc
Exhibit Transcript of May 2   2024   Page 13 of 21

13

1  notable exception that has not been disputed, which is that

2  this secured creditor, despite all that has gone on before,

3  offered a modification which was not accepted.

4       So the plan is not feasible.  But, also, I'm finding

5  that it's not proposed in good faith.  As Judge Frank in the

6  Eastern District of Pennsylvania observed, a bankruptcy judge

7  is obliged from time to time to decide whether a debtor is

8  seeking to abuse the spirit of the Bankruptcy Code and is

9  acting in bad faith.  In this Court's view, this is a

10  consummate example of an abuse of the spirit, intent, and

11  purpose of the Bankruptcy Code.  In re Ames, 2022 WL 2195469*1

12  (Bankr. E.D.Pa. June 17, 2022).

13       When determining whether a Chapter 13 plan was

14  proposed in good faith, bankruptcy courts in this circuit apply

15  the same analysis used for determining whether a Chapter 13

16  petition was filed in good faith or whether the case should be

17  dismissed under 13 or 7, or converted.  But, actually,

18  conversion is not really an option here.  But that's Hackerman

19  v. Demeza, 576 B.R. 472,479 (M.D.Pa. 2017).  See also In re

20  Rickabaugh (phonetic), 2021 WL 352019*3 (Bankr. M.D.Pa. August

21  10, 2021).

22       The Third Circuit recognizes the lack of good faith

23  as causes for purposes of 1307 and dismissal.  In re Lilley, 91

24  F.3d 491,496 (3d Cir. 1996), joining the Seventh, Ninth, and

25  Tenth Circuits to read a good-faith requirement into Chapter

Case 22-18145-VFP   Doc 110-1   Filed 05/30/24   Entered 05/30/24 12:57:06   Desc
Exhibit Transcript of May 2   2024   Page 14 of 21

14

1  13.

2       In determining whether the Chapter 13 filing was made

3  in good faith, the facts must be assessed on a case-by-case

4  basis in light of the totality of the circumstances.  In re

5  Lilley, 91 F.3d 496.

6       The fact-sensitive determination, the Third Circuit,

7  it left guidelines for the bankruptcy courts to follow in

8  making this fact-sensitive determination.  Id., 496, quoting In

9  re Love, 957 F.2d 1350,1355 (7th Cir. 1992).

10       And in the Love case, which the Third Circuit relied

11  on, the court analogized good faith under 1307 to good faith

12  under 1325, finding the same policy embodies the two good-faith

13  evaluations and at base, this inquiry -- quoting, "At base,

14  this inquiry often comes down to a question of whether the

15  filing was fundamentally fair, there was a non-exhaustive list

16  of factors to be considered."  957 F.2d 1357.

17       The nature of the debt, including the question

18  whether the debt would be non-dischargeable in a Chapter 7

19  bankruptcy proceeding.  That's really not relevant here because

20  it's a Chapter 13, and -- well, I don't know about the debt.

21       The timing of the petition, both this petition and

22  the prior petition, were filed on the even of foreclosure sale.

23  How the debt arose, more run-of-the-mill mortgage foreclosure

24  and default, that has resulted in almost two decades of

25  litigation before each level of the courts in New Jersey and

Case 22-18145-VFP   Doc 110-1   Filed 05/30/24   Entered 05/30/24 12:57:06   Desc
Exhibit Transcript of May 2   2024   Page 15 of 21

15

1  this Court.

2        The debtor's motive in filing the petition, well, the

3  motive was obviously to stay the foreclosure sales that were

4  scheduled.  But, also, then, as I noted during oral argument,

5  it's clear to me by the recent filing that in addition to the

6  filing in the eve of foreclosure, the idea of starting another

7  litigation in this Court based on standing and assignment, the

8  improper record of assignments and fraud in the assignments,

9  which was litigated ad nauseum in the state court and seeks to

10 be re-litigated here I guess on the basis of newly-discovered

11 evidence which was the basis for the other times.

12        And besides perhaps skepticism about that, that's

13 perfect for the state court.  There's rules on that.  If

14 there's some newly-discovered evidence that wasn't available

15 before and that might be grounds to affect a judgment in state

16 court.  But that path has already been gone down a number of

17 times.  I'm not sure how receptive that would be.  But that's

18 what the state court is for.  What really it should not be for

19 is -- what this Court is not for is to revisit and effectively

20 reverse what the state court has done after all that's been

21 going on.

22        How the debtor's actions affected creditors.  Really,

23 the only credit that was affected here is the secured creditor

24 who's been seeking to foreclose for years and has a foreclosure

25 judgment for over five years.

Case 22-18145-VFP   Doc 110-1   Filed 05/30/24   Entered 05/30/24 12:57:06   Desc
Exhibit Transcript of May 2   2024   Page 16 of 21

16

1              Whether the debtor has been forthcoming with the

2    bankruptcy court and the creditors.  I have no evidence of any

3    effort to sell, refinance, or even modify the mortgage except

4    that the lender offered -- it's the other way, the lender

5    offered, and it was rejected.  So I can't find that there's

6    been forthcoming.  I don't even know if the -- I don't have any

7    evidence as to whether the property was listed.  I don't even

8    know if the property was marketed.  I don't know if there were

9    any offers made and how much.

10             I don't know any of that because it's not before me.

11   And there's no application refinance.  So definitely not

12   forthcoming.

13             And that the real purpose of this case was to obtain

14   a litigation advantage against the secured creditor by staying

15   their foreclosure and then seeking to re-litigate it again,

16   which these cases are Chapter 11 cases but they're analogous

17   from the Third Circuit that say trying to obtain a litigation

18   advantage is not a proper purpose under the Bankruptcy Code.

19   In re Integrated Telecom Express, 384 F.3d 108 and 15375

20   Memorial Corp, 589 F.3d 605 (3d Cir. 2009).

21             As I noted before, the Court denied confirmation of

22   the first plan on 5/4/23 for various reasons.  The first

23   modified plan was filed on 5/11, and it provided for a sale,

24   refinance, or loan modification by March 31st, 2024.  It didn't

25   happen.  The Court denied confirmation of that plan on 1/4/24

17

1  and required a modified plan to be filed in two weeks or the

2  case would be dismissed.  A modified plan -- second modified

3  plan was filed on 2/1/24 timely, and once again called for the

4  sale, refinance, or loan modification by March 31st, 2024.

5  Questionable what the difference is, if anything, in those two.

6  But it was filed, and we're here today on confirmation of that

7  after the adjournments.

8           Besides not selling, refinancing, or modifying by

9  March 31st, 2024, there's a history of unfulfilled promises and

10  delay in both the state court and the bankruptcy court.  Debtor

11  has been in default on the mortgage since 2006.  A final

12  judgment of foreclosure was entered in 2018.  Debtor's motion

13  to vacate that judgment was denied.  An appeal of that denial

14  was denied.

15           Multiple adjournments of the sheriff's sale were

16  obtained through the debtor's efforts, including that the

17  debtor had the money to pay the judgment.  When no further

18  adjournments were possible, the debtor filed her first case in

19  2020.  In that case, the debtor never filed a Chapter 11 plan,

20  filed a motion to obtain post-petition financing stating that

21  her relative would loan her the money to pay off the mortgage

22  in full, and then sought to modify that and not get the money

23  from the relative, even though it was purportedly there, and

24  sought partial relief from stay to go to the state court to

25  litigate the identity of the creditor.

1        Here we are again talking about the identity of the

2   creditor.  And this Court granted that stay relief, and that

3   was the -- I think another set of appeals that was -- and

4   motions for reconsideration that went up to the Appellate

5   Division and now pending in the Supreme Court that were denied.

6        But even if the Supreme Court grants certification

7   and the Kostopouloses win, the case belongs in the state court

8   where the judgment was entered and where the appropriate relief

9   can be granted, not here.

10        Then, the Court -- when there was no progress in that

11   Chapter 11 case, the Court issued its own order to show cause

12   and also on the basis of those actions, which there was

13   purportedly money to repay in full, and then that was pulled.

14   And instead, more litigation.  That was more than -- that was

15   probably three years ago.

16        And that further litigation continued and was

17   unsuccessful and then resulted in a sale being scheduled.  And

18   on the day before the second sale, this 13 case was filed.

19   While in this 13 case, more litigation was undertaken in state

20   court and, as I said, that went up to the Appellate Division

21   and was denied.  And then, certification has been sought, and I

22   don't know what the result of that will be.

23        So then, at the confirmation hearing on the second

24   amended plan in January 4th of 2024, this Court expressed a

25   need to move this case along and bring an end to the litigation

Case 22-18145-VFP   Doc 110-1   Filed 05/30/24   Entered 05/30/24 12:57:06   Desc
Exhibit Transcript of May 2   2024   Page 19 of 21

19

1  between the parties and bring that litigation to a conclusion

2  so that the parties can stop litigating and move forward and

3  have a plan.  And you know what?  If there was a sale,

4  mortgage, or refinance that paid it off in full by March 31st,

5  that's what would have happened.

6          And who knows, they could have pursued whatever other

7  claims they had or didn't have, you know, depending on what the

8  law is relating to whether those claims were preserved.  So at

9  that time, in any event, the March 31st deadline was

10 established and adopted again in the second amended plan.  And

11 that was not complied with.

12         1307 addresses conversion or dismissal of Chapter 13

13 cases.  Among the non-exclusive reasons to convert or

14 unreasonable delay by the debtor that is prejudicial to

15 creditors and denial of confirmation of the plan under 1325.

16 That's 1307(c)(1) and (5).  And also bad faith or lack of good

17 faith is cause for dismissal, as I indicated.  All of those

18 grounds of dismissal are present here.

19         The Court has denied confirmation of the third plan

20 because it was non-confirmable on its face and that satisfies

21 1307(c)(5) by itself.  Second, the Court finds there's been

22 unreasonable delay that is prejudicial to creditors.  Really

23 the only creditor that's affected by this has really been the

24 secured creditor.  And that is grounds for dismissal under

25 (c)(1).  And then, under the general bad faith that I said

1  before that really all of this was just another effort to delay

2  the foreclosure and sale of the property without any apparent

3  effort to sell it and refinance it or modify the mortgage and

4  address it.

5          And then, to the extent there's an issue as to --

6  after all this, and I did look at Ms. McConnell's

7  certification.  And I can't say I read every word because it

8  just got submitted, but it talks about standing and improper

9  assignments and fraud in the assignments.  And I know those

10 issues have been litigated in state court.  Even the time

11 sheets of the firm representing the Kostopouloses in the

12 Appellate Division reflects that one of the things that they

13 talked about was the assignments of the mortgage.  That was a

14 big issue.  Standing is a big issue.  That's it.  Those things

15 were all addressed.

16         And if there is some basis to address them, and I'm

17 not inviting that by any means, I'm saying it's just that this

18 is not the right court for that.  So I am dismissing under

19 1307(c) for lack of good faith, for failure -- for denial of

20 confirmation of a plan, and unreasonable and prejudicial delay

21 on the real party in interest and other party in interest in

22 this case, the secured creditor.

23         So that moots the motion to modify the claim.  And

24 I'm just dismissing the case.  And that's my ruling.

25         MR. LEVITT:  Your Honor, I just would like the

21

1  opportunity to submit my final fee application in the case.

2          THE COURT:  You have 30 day.

3          MR. LEVITT:  Very good.

4          THE COURT:  Yep.  Yep, okay?

5          MR. LEVITT:  Thank you, Your Honor.

6          THE COURT:  Okay.  Thank you.

7          MR. SCHWARTZ:  Thank you, Your Honor.

8          THE COURT:  Thank you.

9              (Proceedings adjourned at 12:00 p.m.)

10                    * * * * *

11

12

13

14              **C E R T I F I C A T I O N**

15          I, DIPTI PATEL, court-approved transcriber, certify

16  that the foregoing is a correct transcript from the official

17  electronic sound recording of the proceedings in the above-

18  entitled matter, and to the best of my ability.

19

20  /s/ Dipti Patel

21  DIPTI PATEL, CET-997

22  J&J COURT TRANSCRIBERS, INC.        DATE:  May 9, 2024

23

24

25